# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-cv-00161-TBR

LINNIE TINSLEY                                                             PLAINTIFF

v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY d/b/a
CIGNA Group Insurance                                      DEFENDANT

## MEMORANDUM OPINION

The Plaintiff has filed a motion to remand for lack of federal jurisdiction, or, in the alternative, a motion to strike any ERISA Defenses. Docket #18. The Defendant has filed a response. Docket #23. The Plaintiff has filed a reply. Docket #24. This motion is now ripe for adjudication. Having been fully informed of the issues, this Court GRANTS the motion to remand and DENIES the motion to strike as moot.

## BACKGROUND

The Plaintiff, Linnie Tinsley ("Plaintiff"), was an employee of Siemens Corporations until 1994. At some point in the mid-1980s, Plaintiff took out a Group Universal Life Insurance policy from Connecticut General Life Insurance Company, the Defendant ("Defendant"). The Group Universal Life Insurance policy was contained in a Siemens Benefits Guide, but was completely voluntary, could only be paid for with after-tax dollars, and required separate proof and acceptance of insurability, evaluated by the Defendant, for the majority of the plans. The Group Universal Life Insurance policy contained a provision that, in the event of total disability, the premiums of the plan would be waived. The Plaintiff left the employ of Siemens in 1994 due to back and neck trouble, and qualified for some disability benefits. The Plaintiff had multiple medical appoints between 1994 and the current date. The Plaintiff tried multiple times to have the premiums of her Group Universal

Life Insurance waived between 2003 and 2009, but all those claims were denied. After multiple denials, the Plaintiff filed suit in the Crittenden Circuit Court. Defendant filed a motion to remove this action on the grounds that this Court has jurisdiction both on federal question grounds and diversity of citizenship grounds. The Plaintiff contests both of these grounds of jurisdiction, and has accordingly filed a motion to remand. Alternatively, if there is diversity jurisdiction, the Plaintiff moves to strike the Defendant's ERISA defenses on the grounds that ERISA does not cover the disputed policy.

## STANDARD

### I. Motion to Remand

The Plaintiff bases her motion to remand on an assertion that the court lacks subject-matter jurisdiction because the action does not present a federal question, and once federal question jurisdiction is removed as a basis of jurisdiction, the amount in controversy does not meet the required jurisdictional minimum required for diversity jurisdiction. A federal question exists when an action arises "under the Constitution, laws, or treaties of the United States" and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1331; 28 U.S.C. § 1447(c). The removing party bears the burden of proving the existence of federal jurisdiction. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006).

### II. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court may use Rule 12(f) to correct the pleadings when the defect "may affect the merits of the litigation or prejudice one of the parties." 5C Wright & Miller, *Federal Practice & Procedure* §

1382 (3d ed. 2009).

"One test that has been advanced for determining whether an allegation in a pleading is immaterial and impertinent . . . is whether proof concerning it could be received at trial . . . ." 5C Wright & Miller, *Federal Practice & Procedure* § 1382; *see, e.g., Tucker v. A & P Food Stores*, 9 F.R.D. 607, 608 (N.D. Ohio 1949); *Winkler-Koch Eng'g Co. v. Universal Oil Prods. Co.*, 79 F. Supp. 1013, 1019 (S.D.N.Y. 1947) (reference to a settlement in the complaint was stricken because of the generally accepted rule preventing admissibility of settlement at trial). If this Court determines that ERISA does not govern but retains jurisdiction, it would be appropriate to strike any ERISA based defenses as those defects would "affect the merits of the litigation." 5C Wright & Miller, *Federal Practice & Procedure* § 1382.

### III. ERISA

Plaintiff argues that Defendant has failed to demonstrate that the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), is applicable to the insurance policy at issue. ERISA is a comprehensive statute enacted to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). ERISA governs employer established or maintained "employee welfare benefit plans" that, among other things, provide benefits in the event of sickness, accident, disability, or death through the purchase of insurance. 29 U.S.C. § 1002(1).

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996). The Court follows a three-step factual inquiry:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA.

> . . . Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." . . . Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Id.* at 434-35 (citations omitted). An insurance policy is excluded under the "safe harbor" provision if: "(1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered with payroll deduction." *Id.* at 435 (citing 29 C.F.R. § 2510.3-1(j)). All four requirements must be satisfied. *Id.* (citing *Fugarino v. Hartford Life and Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir. 1992)).

"The question of endorsement *vel nom* is a mixed question of fact and law. In some cases, the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion." *Thompson*, 95 F.3d at 437 (quoting *Johnson*, 63 F.3d at 1135 n. 3).

### IV. Amount in Controversy

To establish subject matter jurisdiction based on diversity of citizenship, the amount in controversy must be at least $75,000. 28 U.S.C. § 1332(a). The removing party must show that it is more likely than not that the amount will exceed $75,000. *Williamson v. Aetna Life Ins. Co.*, 461 F.3d 369, 375 (6th Cir. 2007). In making this showing, a court can consider "not only the face value of the [claim], but also compensation awardable by law for mental anguish . . . attorneys' fees, and punitive damages." *Id.* at 377 (quoting *Woodmen of the World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 Fed.Appx. 194 (6th Cir. 2005)(unpublished)). Generally, attorneys' fees are only allowed if they are provided for by contract or statute. *Id.*

# DISCUSSION

This Court will first consider the ERISA issues raised, followed by the jurisdictional amount.

## I. ERISA

The first issue this Court must consider is whether the Plaintiff's claims are governed by ERISA. To be governed by ERISA, a challenged employee benefit plan must (1) not be excluded by the safe harbor, (2) be included in the ERISA definition of a plan, and (3) be established or maintained with the intent of providing benefits for the employees.

### A. Safe Harbor

In order to be exempt from ERISA, the Plan must satisfy all four of the "safe harbor" criteria. *See Thompson*, 95 F.3d at 435. The first, second, and fourth criteria are not disputed in the instant case. The Plaintiff in this case paid 100% of the premium associated with the Group Universal Life insurance. Plaintiff's choice to participate in the plain was completely voluntary. Finally, the Defendant received no consideration for the employee enrolling in the plain. The only issue is the third criterion.

The third criterion asks whether the employer endorses the policy. *See id.* The key to this determination is "employer neutrality." *Id.* at 436. The Sixth Circuit has held that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Id.* The amount of employer involvement should be considered from an employee's point of view. *Id.* at 437.

In *Thompson*, the Sixth Circuit adopted the First Circuit's reasoning in *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 (1st Cir. 1995). *Johnson* held:

> [A]s long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs

> other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program . . . . It is only when an employer purposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture.

63 F.3d at 1134. Various courts have examined the factual scenarios that present issues of employer neutrality. For example, in *Thompson*, the Sixth Circuit found that employer determination of eligibility, negotiation of the terms of the policy, or naming the employer as plan administrator may be enough for a finding of endorsement. 95 F.3d at 436. In *Nicholas v. Standard Ins. Co.*, the Sixth Circuit ruled that "when an employer determines which employees will be eligible for coverage, negotiates the terms or benefits of the policy, is named as the plan administrator, and provides a summary plan description describing the plan as an ERISA plan, the plan is governed by ERISA." 48 Fed. App'x 557, 564 (6th Cir. 2002).

*Johnson* held that the trial court's finding of "no endorsement" was not clearly erroneous where the employer distributed booklets, recommended enrollment in a letter printed on company letterhead, and tracked employee eligibility. 63 F.3d at 1135-36 ("[The employer] had no hand in drafting the plan, working out its structural components, determining eligibility for coverage, interpreting policy language, investigating, allowing and disallowing claims, handling litigation, or negotiating settlements."). The First Circuit distinguished *Johnson* from a similar case in which the Fifth Circuit ruled that the employer had endorsed the insurance plan at issue by embossing the program booklet with the corporation's logo, and describing the policy in the booklet as "our plan." *Id.* at 1137 (citing *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 973-74 (5th Cir. 1995)). The First Circuit found that "[i]n the difference between 'our plan' and 'a plan' lies the quintessential meaning of endorsement." *Id.*

Judge Simpson of the Western District of Kentucky recently distilled the language from *Thompson* into five factors to consider when determining whether an employer behaved neutrally

towards a plan. These factors are:

> (1) Has the employer played an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits thereunder?
> (2) Is the employer named as the plan administrator?
> (3) Has the employer provided a plan description that specifically refers to ERISA or that the plan is governed by ERISA?
> (4) Has the employer provided any materials to is employees suggesting that it has endorsed the plan?
> (5) Does the employer participate in processing claims?

*Booth v. Life Ins. Co. of North America*, No. 3:05CV-526, 2006 WL 3306846, at * 2-3, 2006 U.S. Dist. LEXIS 82856 (W.D.Ky. Novermber 9, 2006).

This Court shall structure its approach to endorsement around the factors from *Booth*.

**(1) Has the employer played an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits thereunder?**

On a basic level, it seems undisputed that Siemens determines which employees will be eligible for coverage. According to the Group Universal Life Insurance policy, all full time employees or part time employees working 30 hours a week or more are eligible. Any time Siemens made an employment decision they were, in some sense, determining eligibility. However, it seems questionable as to whether basic employment decisions are the kind of eligibility determination imagined by the Sixth Circuit in *Thompson*. Along a similar line, when eligibility was limited to non-union members of a company, Chief Judge Coffman was not persuaded that hiring an employee to a non-union position was the kind of determination that met the determining eligibility requirement. *Pemberton v. Reliance Standard Life Ins Co.*, 2008 WL 4498811 (E.D.Ky. 2008). Without more, this Court would have to find that the determining eligibility requirement weighed in favor of neither the Plaintiff nor Defendant. However, certain levels of the Group Universal Life insurance coverage required "Proof of Insurability." CIGNA-TINSLEY Discovery, pg. 1662. If

Proof of Insurability is required (which it is for most of the plans), the Group Life Insurance did not begin until "CIGNA approves your application." *Id.* This makes it clear CIGNA made the type of individualized eligibility decisions for employees wishing to be covered by Group Universal Life Insurance, not Siemens.

Before determining whether this factor favors the Plaintiff or Defendant, this Court must also look to whether the employer played an active role in negotiating the policy or benefits. While the Defendant makes a blanket assertion that they did negotiate the policy, they do not cite to the record to establish this fact and this Court can find no evidence of negotiation. The Defendant claims that a bidding process shows negotiation, but this Court disagrees. Rather, a bidding process, without more, is only an indication of "an employer [assisting] its work force by arranging for the provision of desirable coverage at attractive rates," which, if done only as an honest, neutral broker, "will not put [the employer] to the trouble and expense that meeting ERISA's requirements entails." *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1333 (1st Cir. 1995). In addition, to the extent that the bid process may be indicative of negotiation, it occurred in 2000, more than a decade after the Plaintiff joined the plan and years after the Plaintiff left employment at Siemens. Due to the lack of any evidence of negotiation over the terms or benefits, this Court concludes that the Defendant did not make an adequate showing for this factor.

Accordingly, since CIGNA made the individual eligibility determinations and there is no evidence that Siemens negotiated with CIGNA over the terms or benefits, the first factor weighs in favor of the Plaintiff.

**2. Is the employer named as the plan administrator?**

Both sides claim that this simple factual issue favors them. The Defendant claims that "the documents name Siemens as the Plan Administrator." Defendant's Response, Docket #23, pg. 9.

However, the Defendant does not follow this important statement with any citation to prove its validity. According to Plaintiff's motion, "Siemens is not named as plan administrator of the universal life coverage." Docket #18-2 pg. 13. In the documents cited by Plaintiff, there was no mention of any plan administrator, Siemens or otherwise. Given that the policy is fully portable and stays in effect after an employee leaves Siemens, it seems unlikely that Siemens would want to administer this policy. Because there is no evidence of a plan administrator on the Certificate of Insurance and it is unlikely Siemens would administer a plan that could involve, as it did in this case, claimants that had not worked for Siemens in a decade, this factor favors the Plaintiff.

**(3) Has the employer provided a plan description that specifically refers to ERISA or that the plan is governed by ERISA?**

This Court has been unable to find any mention of ERISA in documents that would be supplied to the employee. While the Defendant asserts ERISA is mentioned in the Summary Plan Description for the Group Universal Life Insurance, there was no citation to the record to establish mention of ERISA and this Court was unable to find a description mentioning ERISA. The Defendant also asserts that an IRS 5500 filing demonstrates that the plan should be governed by ERISA. However, filing an IRS Form 5500 has generally been disregarded when considering endorsement because it "relates to [the employers] intent, not to how its participation with the plan was perceived by its employees." *Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 811 (S.D.Ohio 2003); *see also Johnson*, 63 F.3d at 1137, n. 5 (referring to 5500 forms was "an example of the mountain laboring, but bringing forth a mouse."), *Burnett v. AIG Life Ins. Co.*, 2010 WL 235033, *6 (E.D.Ky. 2010). Accordingly, this Court is aware of no evidence that the plan description specifically refers to ERISA or that the plan is governed by ERISA and this factor favors the Plaintiff.

**(4) Has the employer provided any materials to its employees suggesting that it has endorsed the plan?**

Plaintiff and Defendant part ways on the fourth factor as well. The Plaintiff states that the Defendant did nothing to actively endorse the plan. The Defendant does not seem to dispute the fact that they never told their employees to buy Group Universal Life Insurance. See Defendant's Response to Motion to Remand and Strike, Docket #23, pg. 9 ("Plaintiff can be expected to argue in reply that there is no evidence that Siemens told its employees they ought to buy GUL product, but the Court should not be misled on this point. "Endorsement encompasses many activities apart from a direct urging to purchase a particular benefit selected by the employer for offer to its employees." [No citation included]"). However, Defendant claims that Siemens endorsed the plan by including it in their Siemens Benefits Guide. The Siemens Benefits Guide prominently displayed the corporate name and logo and summarized the various plans available to employees of Siemens. Siemens also selected only one supplemental life insurance policy, the Group Universal Life Insurance policy in dispute in this case, to include in the Guide, rather than offering a menu of policies to supplement the corporate basic life insurance plan. All of these facts lend merit to the argument that the plan's presence in the Siemens Benefits Guide is an endorsement. However, this Court is unable to conclude that mere inclusion in the Siemens Benefits Guide is evidence of endorsement because this is directly contradicted by the guide itself. Also included in the Siemens Benefits Guide is a benefit encompassing financial planning, and Siemens followed the section on financial planning with a statement disclaiming any endorsement of the plan. Discovery Material, CIGNA-TINSLEY pg. 1667. Because the Siemens Benefits Guide contradicts, on its face, that mere inclusion is endorsement, this Court cannot find to the contrary. Accordingly, the issue is whether inclusion in the guide without a disclaimer would be enough to constitute endorsement, along with

any other evidence of endorsement. This issue is a factual one that cannot be resolved by this Court on a motion to remand or a motion to strike.

**(5) Does the employer participate in processing claims?**

Finally, this Court must analyze what participation, if any, Siemens had in processing claims. This Court can find no contention in the Defendant's response that Siemens had a role in processing claims. The fact that the coverage can continue largely unchanged after the end of the employment relationship also seems to indicate that Siemens would take no role in processing claims. Finally, the Plaintiff has sworn in an affidavit that the employer did not participate in processing claims. In light of this undisputed statement, this factor favors the Plaintiff.

Because four factors weight in favor of the Plaintiff and one factor is inconclusive, this is a situation where "the evidence [points] unerringly in one direction so that a rational factfinder can reach but one conclusion." *Thompson*, 95 F.3d at 437. This plan was not endorsed by Siemens and is therefore covered by the safe harbor provision. Since the plan is covered by the safe harbor provision, ERISA does not govern. While this would normally end the inquiry, this Court will nonetheless consider the remaining two requirements for an ERISA plan.

### B. A "Plan"

The next issue this Court must consider is whether there was a plan as required by ERISA. In this case, the plan requirements are readily apparent: the intended benefits are portable life insurance for the employee, their spouse, and their dependants; the class of beneficiaries includes all employees working over 30 hours a week, and for most levels of coverage it is further limited to those employees able to prove insurability; the source of financing was 100% from the employee using after tax dollars; and the procedure for receiving benefits involved filing claims directly with CIGNA.

### C. "Established or Maintained"

Finally, this Court must look at whether Siemens "established or maintained" the plan "with an intent to provide benefits to its employees." *Thompson*, 95 F.3d at 438. In this case, there is some question as to whether Siemens "established and maintained" a plan or merely "[made] the insurance available." *Bailey v. Minnesota Life Ins. Co.*, Civil Action No. 07-192-JBC, 2009 WL 803701, at *7 (E.D.Ky. March 24, 2009). Similar to *Bailey*, Siemens only "[assisted] with enrollment and the transfer of documents." *Id.* In the current case, Siemens also provided automatic payroll deductions to pay for the Group Universal Life Insurance plan; it is unclear if those were provided in *Bailey*. However, similar to *Bailey*, and important to determining whether Siemens had an "intent to provide benefits to its employees," is the fact that coverage at almost all levels depended on evidence of insurability evaluated by CIGNA. Since these elements "indicate that the [insurance company] retained control over which employees were insurable," this Court cannot find that Siemens "established or maintained" the Group Universal Life Insurance policy. *Id.*

### ERISA Conclusions

Whether ERISA applies to the policy in question is dispositive on both federal question jurisdiction and the motion to strike. For ERISA to apply, the policy must not be protected by the Department of Labor's 'Safe Harbor' provision, the policy must be a plan, and the policy must be established and maintained by the employer for the benefit of the employees. When determining if a plan is covered by the 'Safe Harbor' provision, a court must apply a four-part test. Of the four parts of that test, the only contested issue is part three, whether the employer 'endorsed' the policy. To determine endorsement, this Court must be guided by the opinion in *Thompson*. Other courts interpreting *Thompson* have found that endorsement could be distilled down to 5 primary factors. When looking at these factors, four weighed in favor of the Plaintiff and one was largely

inconclusive. This shows that the plan falls within the safe harbor provision. In addition, Siemens did not "establish or maintain" a plan for the benefit of its employees. Rather, Siemens merely advertised the additional insurance since they had no involvement in the plan and, for a majority of the options under the plan, eligibility was subject to insurability determined by the Defendant. Accordingly, this action is not governed by ERISA and this Court lacks federal question jurisdiction.

## II. AMOUNT IN CONTROVERSY

The complaint in this case demands past premiums; waiver of future premiums; punitive damages for a bad faith denial, recklessness and gross negligence; attorneys' fees under KRS 304.12-235; and compensation for emotional pain and suffering. The complaint also asks for prejudgment and post judgment interest, but these are properly excluded from an amount in controversy calculation. 28 U.S.C. § 1332(a). Generally, when "a plaintiff alleges a specific amount of damages in the complaint, that amount controls unless defendant proves to a "legal certainty" that plaintiff in good faith cannot claim the jurisdictional amount. *Egan v. Premier Scales & Systems*, 237 F. Supp. 2d 774, 776 (W.D.Ky. 2002) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1939)). However, in Kentucky, the law prohibits plaintiffs from making a specific money demand. *Id.* To avoid "automatically [transforming] most Kentucky state law claims into questions for federal courts," the Defendant must prove more than a "possibility" of recovery in excess of $75,000. *Id.* In *Egan*, Chief Judge Heyburn found that an action involving claims for lost wages and discrimination with a demand for punitive damages allowed the defendant to easily show that the claims were more likely than not to reach the amount in controversy requirement. Similarly, the current case also involves punitive damages. However, unlike lost wages claims, which even at minimum wage will generally include tens of thousands of dollars, the insurance premiums are alleged to amount to no more than $6,000 dollars. In *Fenger v. Idexx Lab., Inc.*, 194 F. Supp. 2d 601

(E.D.Ky. 2002), the court summarized Sixth Circuit precedent which made clear that "federal courts strictly construe removal petitions in a manner that resolves all doubts against removal." *Id.* at 602. The court made clear that, even if punitive damages are alleged, a defendant should "make further inquiry into the actual amount of damages or run the risk of remand when the plaintiff provides that information." *Id.* at 603 (internal quotations and modifications removed). Similar to that case, "here, the defendant removed this action without filing interrogatories as to the plaintiff's specific monetary damages claimed." *Id.* The Plaintiff in this case has since alleged that the amount in controversy is $6,000 or less. While punitive damages and attorneys' fees surely have the possibility to increase that value, this Court cannot say for certain whether it is more likely than not to increase above $75,000. Accordingly, this Court must resolve any doubt in favor of the non-removing party and conclude that the jurisdictional amount requirement for diversity jurisdiction is not met.

## CONCLUSION

For the foregoing reasons, the motion to remand is GRANTED and the motion to strike is DENIED as moot.

An appropriate order shall follow.